```
                    UNITED STATES DISTRICT COURT

                   EASTERN DISTRICT OF CALIFORNIA

                            ----oo0oo----
```

LATEACHEEAH G. ANDERSON SALVATTO, and RICHARD SALVATTO, individually and as guardians for JAMAL THROWER, a minor,

        Plaintiffs,

    v.

COUNTY OF SOLANO, CITY OF VALLEJO, COUNTY OF SOLANO SHERIFF'S DEPARTMENT, LIEUTENANT LIDDICOET, OFFICER K. MCCARTHY, VALLEJO POLICE DEPARTMENT, WATCH COMMANDER K. SCHROEDER, CORPORAL B. CLARK, OFFICER WHITNEY,

        Defendants.

NO. CIV. S-04-0163 WBS GGH

MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT

```
                            ----oo0oo----
```

        This matter is before the court on the motion of all defendants for summary judgment, pursuant to Fed. R. Civ. 56(b), on all of plaintiffs' claims for relief.

I.  <u>Factual and Procedural Background</u>

        Plaintiffs are Jamal Thrower, Lateacheeah G. Salvatto ("L. Salvatto"), and Richard Salvatto ("R. Salvatto").  R.

1

Salvatto is the husband of L. Salvatto. (Compl. ¶ 85.)  At the time of incidents underlying the complaint, Thrower was a minor child living voluntarily with the Salvattos, but neither related to nor a foster child of the Salvattos. (Pl.'s Statement of Disputed and Undisputed Facts # 1-2.)  Defendants are the City of Vallejo, specifically the Vallejo Police Department ("VPD"), and the following individual police officers from VPD: Lieutenant Tom Liddicoet, Officer Kevin McCarthy, Watch Commander Kelly Schroeder, Corporal Brett Clark, and Officer John Whitney.[1]

On Sunday, January 5, 2003, Whitney observed Thrower operating his motor scooter on the sidewalk. (Id. # 4-5.) Whitney detained Thrower and transported him to the VPD police station after Thrower failed to provide identification. (Id. # 7-9, 11.)  Whitney subsequently cited Thrower for driving on the sidewalk. (Id. # 13.)

Later that day, L. Salvatto visited VPD headquarters to complain about the citation issued to Thrower. (Id. # 19.) Because it was Sunday, the VPD lobby was closed to the public. (Id. # 20.)  Outside the VPD building, there is a courtesy phone, which connects to a VPD dispatcher. (Id. # 21.)  L. Salvatto placed a call to complain about Whitney's citation and detention of Thrower. (Id. # 22.)  The dispatcher contacted Whitney, who was out on patrol. (Id. # 23.)  While waiting for Whitney to arrive, L. Salvatto called dispatch via the courtesy phone numerous times, demanding entry into the VPD lobby. (Id. # 24; Knight Decl. Ex. A (transcripts of L. Salvatto's calls to

---

[1] Plaintiff dismissed defendant County of Solano on April 1, 2004, pursuant to Federal Rule of Civil Procedure 41(a).

2

dispatch).) She was told that she would have to wait outside for Whitney. (Knight Decl. Ex. A.) After several calls demanding attention, a dispatcher told her, "I'm sorry but I can't waste time continuing to talk to you," and, on another occasion, to stop raising her voice to the dispatcher. (Id.) However, she continued to call demanding either to be let into the lobby or speak with the watch commander. (Id.) At one point, she demanded to speak to the chief of police. (Pl.'s Statement of Disputed and Undisputed Facts # 61.)

L. Salvatto was admitted to the lobby and told to cease disturbing dispatch operations. (Id. # 27.) Lieutenant Liddicoet asked her to come back when the office was open. (Id. # 28.) Liddicoet also explained to her the citizen complaint procedure. (Id. # 31.) He offered her a complaint form, but she refused to take it. (Id.) After L Salvatto was ordered to exit the lobby or be arrested, McCarthy placed both hands on her arms and forcibly removed her from the building. (Id. # 35, 37) Shortly thereafter, Whitney arrived at VPD and attempted to explain to L. Salvatto why he issued a citation to Thrower. (Id. # 38-39.) Whitney terminated the conversation as L. Salvatto did not appear satisfied by Whitney's explanation. (Id. # 41.)

L. Salvatto then returned home and contacted Liddicoet to complain that McCarthy assaulted her when he removed her from the VPD lobby. (Id. # 42-43, 48.) Liddicoet again explained the citizen complaint procedure and offered to send her a form by U.S. mail. (Id. # 45.) Around 7:15 p.m. that evening, L. Salvatto returned to the police station and, via the courtesy phone, told Schroeder, who had taken over as watch commander from

3

1  Liddicoet, that she was there to fill out a crime report. (Id. #
2  46-48.)  Schroeder let her in and again explained the citizen
3  complaint procedure to her and gave her a complaint form, but she
4  refused to take it. (Id. # 50-51.)  After twenty minutes of
5  conversation, Schroeder told her that she must leave the property
6  to avoid arrest. (Id. # 48, 53.)  L. Salvatto left the VPD
7  lobby, but remained outside of the premises. (Id. # 54.)
8         L. Salvaatto promptly used the courtesy phone two more
9  times to demand attention to her complaints. (Schroeder Decl.
10 Ex. A (Supplemental to Arrest Report).)  Sargent Clark
11 investigated the situation and learned that L. Salvatto had
12 repeatedly used the courtesy phone earlier in the day to demand
13 immediate attention to her complaints. (Id. # 56.)  Clark and
14 Huff proceeded to L. Salvatto's position outside the lobby and
15 told her that she was interfering with dispatch by making
16 repeated calls, had already been assisted by two watch
17 commanders, already told to leave to the premises twice, and that
18 refusal to leave would result in arrest. (Id. # 62-65.)  L.
19 Salvatto did not leave. (Id. # 66.)  Clark gave her one last
20 opportunity. (Id. # 68.)  When she failed to leave, Huff
21 arrested her and VPD impounded her vehicle, which was parked in a
22 green zone in front of the VPD building. (Id. # 69-71.)
23        Prior to January 5, 2003, Dr. Aaron Meltzer, L.
24 Salvatto's podiatrist, medically broke her foot. (Id. # 73.)
25 The day after the incidents at VPD, Meltzer examined L. Salvatto
26 and could not find any injury attributable to her forcible
27 removal from VPD. (Id. # 76.)  Meltzer concludes that the
28 condition of her foot was entirely attributable to his action of

4

1 breaking her foot for medical purposes.  (Id.)

2 On January 23, 2004, plaintiffs filed a complaint, alleging federal claims under 42 U.S.C. § 1983[2] in their first and fourth claims for: 1) Thrower's detainment and citation; 2) L. Salvatto's forcible removal from the police station; 3) her subsequent arrest; and 4) the impoundment of her vehicle. Plaintiffs allege that the above actions violated their rights under the Fourth and Fourteenth Amendments, and additionally allege state law claims of false arrest, assault, battery, abuse of process, and negligence.  R. Salvatto asserts a singular cause of action for loss of consortium.  Defendants filed this motion for summary judgment on February 2, 2007.[3]

---

[2] Plaintiffs do not specifically invoke 42 U.S.C. § 1983 in their complaint.  In the order of December 16, 2005, the court granted plaintiffs' request to stay defendants' previous summary judgment motion pursuant to Federal Rule of Civil Procedure 56(f).  The court also gave plaintiffs an opportunity to amend their complaint to correct this and other defects.
Plaintiffs failed to file an amended complaint. Defendants cite Doe v. Klein for the proposition that failure to specifically invoke 42 U.S.C. § 1983 precludes the court's jurisdiction.  599 F.2d 338 (9th Cir. 1979).  In Klein, the Ninth Circuit held that the Social Security Act does not fulfill the prerequisites of § 1343(3) or (4) because the Congressional purpose behind that legislation was not providing for equal rights or for the protection of civil rights.  Id. at 341.  Thus, the action in Klein could never properly invoke § 1983 regardless of whether plaintiff properly plead it in his complaint.  Klein is inapplicable here.  L. Salvatto and Thrower sufficiently allege cognizable legal claims pursuant to 42 U.S.C. § 1983 and the claims will be construed as such even though the complaint does not specifically invoke § 1983.

[3] Plaintiffs filed their opposition to defendants' motion on March 7, 2007, which is in violation of Local Rule 78-230(c). Defendants request that the court not consider this late filed document.  The rule reads in part: "No party will be entitled to be heard in opposition to a motion at oral arguments if opposition to the motion has not been timely filed by that party."  L.R. 78-230(c).  The imposition of that sanction is discretionary.  The court declined to impose it at oral argument

5

II. <u>Discussion</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial. <u>Id.</u>

Once the moving party meets its initial burden, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324 (quoting Fed. R. Civ. P. 56(e)). The non-movant "may not rest upon . . . mere allegations or denials of the adverse party's pleading . . . ." Fed. R. Civ. P. 56(e); <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135,

---

because defendants suffered little prejudice as a result of delay.

1137 (9th Cir. 1989). However, any inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Additionally, the court must not engage in credibility determinations or weigh the evidence, for these are jury functions.[4] Anderson, 477 U.S. at 255.

    A.   L. Salvatto's Fourth Amendment Claims

Plaintiffs allege violations of L. Salvatto's civil rights in their first and fourth claims for relief. To prove a claim under section 1983, plaintiffs must establish that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes. Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986). Defendants admit that at all relevant times the individual officers were acting under color of state law. Plaintiffs allege that defendants violated L. Salvatto's Fourth Amendment rights by using excessive force to remove her from the VPD lobby, arresting her, and impounding her vehicle.

///

---

[4] Defendants have moved, in the alternative, for summary adjudication. While caselaw exists suggesting that a party may move for summary adjudication of issues, see, e.g., Barker v. Norman, 651 F.2d 1107, 1123 (5th Cir. 1981); First Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 977 F. Supp. 1051 (S.D. Cal. 1997), this is not the type of motion originally contemplated by Rule 56. Moreover, motions for summary adjudication of issues request that the court resolve issues that dispose of neither a party nor a claim, and seldom accomplish anything. Importantly, defendants do not distinguish between their general request for summary judgment and particular issues apt for summary adjudication. Therefore the court's following discussion applies to both requests.

1.  <u>Excessive Force</u>

Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances. <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989); <u>Scott v. Henrich</u>, 39 F.3d 912, 914 (9th Cir. 1994). Summary judgment is appropriate if, after resolving all factual disputes in favor of the plaintiff, the district court concludes that the officer's use of force was objectively reasonable. <u>Scott</u>, 39 F.3d at 914.

After telling L. Salvatto to exit the lobby or else she would be arrested, McCarthy placed both hands on her arms and forcibly removed her from the building. L. Salvatto alleges that McCarthy kicked her, resulting in a resulted in her broken foot. (Compl. ¶ 46(e).) However, plaintiffs' counsel admits that this allegation was in error since her foot was previously medically broken. (Pl.'s Statement of Disputed and Undisputed Facts # 72-73). Further, at oral argument, plaintiffs' counsel admitted that L. Salvatto's position is that McCarthy simply contacted her foot while he was removing her from the lobby. The Supreme Court counsels that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." <u>Graham</u>, 490 U.S. at 397.

L. Salvatto ignored an order to leave the VPD lobby, which was closed at the time. At that point, she had been assisted by Liddicoet and offered a civilian complaint form. She was also told that her conduct, specifically the numerous calls

8

to dispatch, disrupted police operations.  Plaintiffs do not offer evidence that McCarthy's contact with L. Salvatto's foot, if he indeed contacted her foot, was anything more than incidental to his action of escorting her out of the VPD lobby. "Pushes and shoves, like other police conduct, must be judged under the Fourth Amendment standard of reasonableness." Saucier v. Katz, 533 U.S. 194, 209 (2001).  The court concludes that no reasonable jury would find McCarthy's decision to use force, or the amount of force employed, unreasonable under these circumstances.[5]  Accordingly, defendants' motion for summary judgment must be granted on plaintiffs' excessive force claim.

        2.    <u>Arrest of L. Salvatto</u>

L. Salvatto's arrest was lawful if the arresting officer had probable cause to believe she had committed a crime. United States v. Buckner, 179 F.3d 834, 837 (9th Cir. 1999) (further citations omitted).  "Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." Buckner, 179 F.3d at 837.  This question is "'an essentially legal question' that should be determined by the district court at the earliest possible point in the litigation." Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

---

[5] Further, plaintiffs introduce no evidence that McCarthy's action aggravated her preexisting injury to her foot. In fact, she admits that Dr. Meltzer's examination of her foot on the very next day did not reveal an injury other than that which was attributable to her previous medical procedure.

9

In California, it is unlawful to "intentionally interfere[] with any lawful business carried on by the employees of a public agency open to the public, by obstructing or intimidating those attempting to carry on business." Cal. Pen. Code § 602.1(b). It is undisputed that L. Salvatto called one dispatcher sixteen times within a one hour period and another dispatcher five or six times within a fifteen minute period. These calls interfered with police operations as dispatch was busy with calls for police and fire services. (Raymos Decl. ¶ 6; Barden Decl. ¶ 5.)

Plaintiffs dispute that the dispatchers were busy with other calls, but offer no credible evidence to rebut defendants' evidence. Further, L. Salvatto's calls were not emergencies and the dispatchers told her this. (Knight Decl. Ex. A.) She was told at least twice by different officers that her calls disrupted dispatch operations. It is also undisputed that Clark told her that her calls were interfering with dispatch's ability to provide necessary services to other members of the public and not to call dispatch unless she had a real need for police services. (Clark Decl. ¶¶ 5, 9.) She was thrice told about the civilian complaint procedure and twice given forms. She demanded immediate attention to her complaints, refusing to follow the civilian complaint procedure or return during a time when the VPD lobby was open to the public.

Plaintiffs argue that probable cause did not exist because the VPD lobby was not open for business. However, the fact that VPD's lobby was closed made her conduct even more disruptive. Officers twice let her into the lobby to attempt to

10

reason with her when they could simply have told her to return during business hours.⁶ Moreover, Clark told her that she would be arrested for her disruptive behavior if she did not leave the premises. Clark investigated L. Salvatto's behavior and found out about her excessive use of the courtesy phone. Although she was standing in outside of the VPD building when confronted by Clark and Huff, L. Salvatto's disruptive behavior throughout the course of the day reasonably led Clark to believe that she would continue her disruptive behavior (e.g. using the courtesy phone for non-emergency calls) if she did not leave the property. Clark's conclusion that there was a fair probability that L. Salvatto had committed a violation of California Penal Code 602.1(b) is in line with what a prudent person would have concluded. Buckner, 179 F.3d at 837. Therefore, Clark had probable cause to arrest L. Salvatto under California Penal Code 602.1(b), and the arrest did not violate L. Salvatto's rights under the Fourth Amendment.

### 3. Impoundment of L. Salvatto's Vehicle

Plaintiffs contend that towing L. Salvatto's vehicle concomitant with her arrest violated her rights under the Fourth

---

⁶ Plaintiffs further argue that there was not probable cause for an arrest because L. Salvatto was ultimately charged with violating California Penal Code § 602.1(a). It is well established that an arrest is valid even if probable cause does not exist for the stated offense so long as there is probable cause for another valid offense. Bingham v. City of Manhattan Beach, 341 F.3d 939, 952 (9th Cir. 2003) (citing United States v. Bookhardt, 277 F.3d 558, 564 (D.C. Cir. 2002) ("an arrest will be upheld if probable cause exists to support arrest for an offense that is not denominated as the reason for the arrest by the arresting officer") (further citations omitted)). Moreover, Clark's VPD Crime Report denominated L. Salvatto's crime as interfering with a public agency in violation of California Penal Code § 602.1(b). (Clark Decl. Ex. A.)

11

Amendment.  An impoundment of a vehicle is not an illegal seizure under the Fourth Amendment if it was reasonable under all the circumstances known to the police officer at the time the officer made the decision to impound.  South Dakota v. Opperman, 428 U.S. 364 (1976.)  California authorizes peace officers to remove vehicles parked or stopped in violation of local ordinances.  Cal. Veh. Code § 22651(n).  California Vehicle Code § 21458 expressly authorizes localities to indicate time limit parking by painting a curb green.  The City of Vallejo prohibits stopping, standing, or parking beyond posted time limits in areas demarcated with curbs painted green.  Vallejo Mun. Code § 8.12.030.

        The curb outside VPD was painted green, and plaintiffs do not dispute that L. Salvatto's vehicle was there longer than the time allowed.  Nor do plaintiffs argue that there was inadequate notice that vehicles could be towed from this location.  Plaintiffs only argue that "if the arrest was illegal, then the towing of the car was illegal."  (Opp'n 6.)  However, the court has concluded that the arrest was valid.  Further, Clark's impoundment was justified given that he could reasonably have been protecting the vehicle from vandalism or damage given L. Salvatto's inability to do so at the time.  See Hallstrom v. Garden City, 991 F.2d 1473, 1478 (9th Cir. 1993) ("In discharging their community caretaking functions, it was not unreasonable for the arresting officers to protect the car from vandalism or theft by having it towed." (citing United States v. Johnson, 734 F.2d 503, 505 (10th Cir. 1984); United States v. Griffin, 729 F.2d 475, 480 (7th Cir. 1984))).  Impoundment of L. Salvatto's vehicle

12

was not a violation of the Fourth Amendment.  Accordingly, the court will grant defendants' motion for summary judgment on L. Salvatto's Fourth Amendment claims.

B.   Thrower's Fourth Amendment Claims

At oral argument, plaintiffs advised that plaintiffs do not oppose defendants' motion on Thrower's Fourth Amendment claims.  Whitney had probable cause to stop and detain Thrower. In California, an operator of a motorized scooter may not "[o]perate a motorized scooter upon a sidewalk, except as may be necessary to enter or leave adjacent property."  Cal. Veh. Code § 21235(g).  Additionally, failure to produce satisfactory identification allows an officer to make an arrest without violating the Fourth Amendment.  People v. McKay, 27 Cal. App. 4th 601, 620 (Cal. Ct. App. 1st Dist. 2002) (citing Cal. Veh. Code § 21650.1); People v. Hart, 74 Cal. App. 4th 479, 488 (Cal. Ct. App. 3d Dist. 1999).  Accordingly, the court will grant defendants' motion for summary judgment on Thrower's Fourth Amendment claims.

C.   Plaintiffs' Claim under the Fourteenth Amendment

Plaintiffs contend defendants violated their rights to equal protection under the Fourteenth Amendment by failing to meet with L. Salvatto and Thrower, failing to investigate L. Salvatto's assault claim, and selectively towing L. Salvatto's vehicle.  (Compl. ¶¶ 44-46.)  Presumably, plaintiffs also contend that the impoundment of L. Salvatto's vehicle violated the Due Process Clause of the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any person within its

13

jurisdiction equal protection of its laws." "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." Washington v. Davis, 426 U.S. 229, 238 (1976). In a § 1983 claim alleging a violation of equal protection, a plaintiff "must prove that the defendant acted in a discriminatory manner and that the discrimination was intentional." Fed. Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991) (citing Stones v. Los Angeles Cmty. College Dist., 796 F.2d 270, 275 (9th Cir. 1986)) (further citations omitted). Further, a plaintiff need "only produce evidence sufficient to establish a genuine issue of fact as to the defendant's motivations." Id.

Plaintiffs fail to make any allegations regarding racial animus or any allegations as to defendants' motivation. Plaintiffs simply state the above actions violated the rights of Thrower and L. Salvatto.

Plaintiffs complain that defendants failed to meet with Thrower and L. Salvatto and failed to investigate L. Salvatto's assault claim. It is undisputed that the VPD lobby was closed on Sunday. L. Salvatto was given a citizen complaint form and told to come back during specified hours when the VPD lobby would be open. Plaintiffs fail to submit any evidence indicating that L. Salvatto was treated any differently from any person attempting to file a complaint in person at VPD on any given Sunday afternoon.[7]

---

[7] It is also unclear that defendants ever failed to meet with Thrower. At oral argument, plaintiffs affirmatively stated their non-opposition to the summary judgment motions as against

14

1   It is well established that an officer may not rely
2 solely on the claims of a victim of a crime, but must conduct an
3 independent investigation before filing charges. Arpin v. Santa
4 Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001)
5 ("In establishing probable cause, officers may not solely rely on
6 the claim of a citizen witness that he was a victim of a crime,
7 but must independently investigate the basis of the witness'
8 knowledge or interview other witnesses." (citing Fuller v. M.G.
9 Jewelry, 950 F.2d 1437, 1444 (9th Cir. 1991))).  There is no
10 indication that defendants treated L. Salvatto differently in
11 refusing to take a criminal report for the alleged assault on L.
12 Salvatto.  Further, inadequate investigation by police officers
13 is not sufficient to state a § 1983 claim "unless there was
14 another recognized constitutional right involved." Gomez v.
15 Whitney, 757 F.2d 1005, 1006 (9th Cir. 1985).

16   Plaintiffs' claim that L. Salvatto's vehicle was
17 "selectively" towed lacks merit.  Plaintiffs offer no evidence
18 indicating that the impoundment was discriminatory.  As discussed
19 above, L. Salvatto's vehicle was parked in violation of state and
20 local law and was impounded concomitant with her arrest,
21 demonstrating a legitimate, non-discriminatory reason for
22 defendants' action.  Plaintiffs do not attempt to demonstrate
23 that defendants' reasons are a mere pre-text. See Henderson, 940
24 F.2d at 470-473 (affirming summary judgment where plaintiff
25 failed to rebut defendant's legitimate, non-discriminatory reason
26 for adverse employment action after plaintiff proffered evidence

27 ─────────────
28 the defendants' actions towards Thrower.

15

with an inference of racial animus). Defendants' actions did not violate the equal protection rights of L. Salvatto or Thrower.

Impoundment of L. Salvatto's vehicle also is not a violation of her rights under the Due Process Clause of the Fourteenth Amendment. When "no practical way to provide a predeprivation hearing exists, a postdeprivation hearing provided at a 'meaningful time and in a meaningful manner' will suffice." Rutledge v. Arizona Bd. of Regents, 660 F.2d 1345, 1352 (9th Cir. 1981) (quoting Parratt v. Taylor, 451 U.S. 527, 540 (1981)). A predeprivation hearing is not required prior to towing an illegally parked vehicle. Sutton v. Milwaukee, 672 F.2d 644, 646 (7th Cir. 1982). It is undisputed that California provides adequate postdeprivation opportunities for redress. Specifically, plaintiff would have a remedy pursuant to the California Government Tort Claims Act, Cal. Gov't. Code § 810 et. seq. Accordingly, the court will grant defendants' motion for summary judgment with respect to plaintiffs' claims under the Fourteenth Amendment.[8]

### D. Liability of the City of Vallejo and VPD

Plaintiffs name as defendants the City of Vallejo and VPD. Because plaintiffs' claims relate to conduct by individual VPD officers, the only theory by which the City and VPD could be

---

[8] The named individual police officers assert qualified immunity. Because the court has concluded that plaintiffs have not established a violation of their constitutional rights, there is no need to address the officers' qualified immunity argument. Robinson v. Solano County, 278 F.3d 1007, 1013 (9th Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001) ("[I]f a [constitutional] violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.")).

16

1  directly liable is respondeat superior.  However, the Supreme
2  Court has made it clear that "a municipality <u>cannot</u> be held
3  liable under § 1983 on a respondeat superior theory."  <u>Monell v.</u>
4  <u>Dep't of Soc. Servs. of NY</u>, 436 U.S. 658, 691 (1978).

5  These entities may be sued under 42 U.S.C. § 1983, when
6  "the action that is alleged to be unconstitutional implements or
7  executes a policy statement, ordinance, regulation, or decision
8  officially adopted and promulgated by that body's officers."
9  <u>Monell</u>, 436 U.S. at 690.  In the alternative, the city may be
10 liable where the municipality's failure to train employees
11 amounts to "deliberate indifference" to the rights of persons
12 with whom the police come into contact.  <u>City of Canton v.</u>
13 <u>Harris</u>, 489 U.S. 378, 388 (1989); <u>Alexander v. City and County of</u>
14 <u>San Francisco</u>, 29 F.3d 1355, 1367 (9th Cir. 1994).  A plaintiff
15 bringing a <u>Monell</u> claim must demonstrate both that a
16 constitutional deprivation occurred and that the municipality was
17 the "moving force behind the injury alleged."  <u>Id.</u> at 385; <u>Gibson</u>
18 <u>v. United States</u>, 781 F.2d 1334, 1338 (9th Cir. 1986).

19 Plaintiffs fail to allege that defendant officers'
20 conduct was a result of custom or policy as required by <u>Monell</u>.
21 Plaintiffs have also failed to allege or submit any evidence
22 indicative of the City's policies exhibiting "deliberate
23 indifference."  <u>City of Canton</u>, 489 U.S. at 389.  Further, the
24 lack of any constitutional violation by any of the named officers
25 precludes damages.  <u>Los Angeles v. Heller</u>, 475 U.S. 796, 799
26 (1986) ("[N]either <u>Monell</u> . . . nor any other of our cases
27 authorizes the award of damages against a municipal corporation
28 based on the actions of one of its officers when in fact the jury

17

has concluded that the officer inflicted no constitutional harm."). There are no viable claims pursuant to § 1983 against either the City of Vallejo or VPD. Accordingly, the court will award summary judgment, as against these defendants, with regard to plaintiffs' first and fourth claims for relief.[9]

### E. State Law Claims

Plaintiffs' second, third, fifth, sixth, and seventh claims for relief are brought under the laws of the state of California. A district court may sua sponte determine whether to exercise supplemental jurisdiction over state law claims. Ballard v. Equifax Check Servs., Inc., 186 F.R.D. 589, 599 (E.D. Cal. 1999); see also Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c).").

Section 1367(c)(3) allows a district court to decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). In this case, the only federal law claim over which the court had original jurisdiction were the claims pursuant to § 1983, the first and fourth claims for relief. Consequently, pursuant to 28

---

[9] Plaintiffs' complaint is not organized by right nor do plaintiffs clearly articulate which specific federal rights were purportedly violated by the defendants. To the extent that are any other conceivable rights that plaintiffs allege defendants' conduct violated under the vast catalog of rights afforded by the Constitution or federal statutes, plaintiffs fail to meet their evidentiary burden to proffer evidence that raises a disputed issue of material fact to preclude summary judgment. Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

18

U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims.[10]

### III. Conclusion

IT IS THEREFORE ORDERED that defendants' motion for summary judgment as to the first and fourth causes of action under 42 U.S.C. § 1983, be and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that all plaintiffs' remaining state law claims be, and the same hereby are, DISMISSED WITHOUT PREJUDICE, pursuant to 28 U.S.C. § 1367(c)(3), and this action is hereby DISMISSED.

DATED:  March 26, 2007

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[10] Because L. Salvatto's claims are dismissed, R. Salvatto's claim for loss of consortium as a result of her injuries must also be dismissed.